Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

SUPERIOR SAND & GRAVEL, INC., Defendant.

No. M80–2 CA2.

United States District Court, W. D. Michigan, N. D.

May 27, 1980.

James S. Brady, U. S. Atty., Grand Rapids, Mich., for plaintiff.

Norman McLean, McLean & McCarthy, Houghton, Mich., for defendant.

## OPINION

DOUGLAS W. HILLMAN, District Judge.

Secretary of Labor, Ray Marshall, has brought suit against Superior Sand & Gravel, Inc., a sand and gravel mine located in the Upper Peninsula of the State of Michigan, because of defendant's refusal to permit access to the mine by a federal mine inspector. Defendant contends that the inspector in question is unqualified for purposes of the Federal Mine Safety & Health Act of 1977, 30 U.S.C. § 801, et seq. (hereinafter "the Act").

Plaintiff moves for a preliminary injunction pursuant to Section 108 of the Act, 30 U.S.C. § 818.[1] A hearing was held on April

---

1. 30 U.S.C. § 818 reads in part as follows:

§ 818. Injunctions—Civil action by Secretary

(a)(1) The Secretary may institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order in the district court of the United States for the district in which a coal or other mine is located or in which the operator of such mine has his principal office, whenever such operator or his agent—

(A) violates or fails or refuses to comply with any order or decision issued under this chapter,

(B) interferes with, hinders, or delays the Secretary or his authorized representative, or

the Secretary of Health, Education, and Welfare or his authorized representative, in carrying out the provisions of this chapter,

(C) refuses to admit such representatives to the coal or other mine,

(D) refuses to permit the inspection of the coal or other mine, or the investigation of an accident or occupational disease occurring in, or connected with, such mine,

(E) refuses to furnish any information or report requested by the Secretary or the Secretary of Health, Education, and Welfare in furtherance of the provisions of this chapter, or

(F) refuses to permit access to, and copying of, such records as the Secretary or the Secretary of Health, Education, and Welfare

1, 1980. For the reasons that follow, I grant plaintiff's motion.

## FACTS

Duane Stille is a federal mine inspector and former miner with 17 years of underground mining experience, but with no experience in surface mining operations. Stille was hired in May, 1978, by the Federal Mine Safety & Health Commission (hereinafter "FMS&HC") as an apprentice inspector, and thereafter attended a 12-week inspectors' training session in Beckley, West Virginia. Seven of these weeks were spent learning numerous techniques necessary for the proper inspection of all types of mining operations and equipment. On January 3, 1979, Stille was released from probationary status and was made an "inspector".

On June 12, 1979, Stille sought to inspect the Superior Sand & Gravel mines. He was denied entry, however, by one of its owners, Patrick K. Thornton. Thornton objected to the fact that Stille had never previously seen a sand and gravel mine, and had never before witnessed an inspection of one. Thornton, nevertheless, permitted Stille to talk with one of the company's employees, and Stille was given a tour of the company's operation.

On August 29, 1979, Stille returned to defendant's mine and requested entry. Stille informed Thornton that he (Stille) had since June 12, 1979, inspected six or seven other sand and gravel mines. Thornton, however, maintained his position that Stille was unqualified, and again refused access. Stille then telephoned his supervisor, William Carlson, who spoke with Thornton. Carlson described Stille's background, and stated that Stille's mining experience and training were sufficient under the Act for certifying him as an inspector of metal and non-metal properties. Thornton remained adamant, and Stille returned to the Marquette office of the FMS&HC without having inspected defendant's property.

The Government brought suit on January 3, 1980,[2] seeking a preliminary injunction prohibiting defendant from resisting mine entry by authorized mine inspectors. The government maintained that the only legitimate concern of a mine operator regarding the qualifications of an inspector is that he be an "authorized representative of the Secretary" under 30 U.S.C. § 813.[3] The

determines necessary in carrying out the provisions of this chapter.

2. It should be noted that defendant's mine is closed from November to the following May.

3. 30 U.S.C. § 813 reads in part as follows:
§ 813. Inspections, investigations, and recordkeeping—Purposes; advance notice; frequency; guidelines; right of access
(a) Authorized representatives of the Secretary or the Secretary of Health, Education, and Welfare shall make frequent inspections and investigations in coal or other mines each year for the purpose of (1) obtaining, utilizing, and disseminating information relating to health and safety conditions, the causes of accidents, and the causes of diseases and physical impairments originating in such mines, (2) gathering information with respect to mandatory health or safety standards, (3) determining whether an imminent danger exists, and (4) determining whether there is compliance with the mandatory health or safety standards or with any citation, order, or decision issued under this subchapter or other requirements of this chapter. In carrying out the requirements of this subsection, no advance notice of an inspec-

tion shall be provided to any person, except that in carrying out the requirements of clauses (1) and (2) of this subsection, the Secretary of Health, Education, and Welfare may give advance notice of inspections. In carrying out the requirements of clauses (3) and (4) of this subsection, the Secretary shall make inspections of each underground coal or other mine in its entirety at least four times a year, and of each surface coal or other mine in its entirety at least two times a year. The Secretary shall develop guidelines for additional inspections of mines based on criteria including, but not limited to, the hazards found in mines subject to this chapter, and his experience under this chapter and other health and safety laws. For the purpose of making any inspection or investigation under this chapter, the Secretary, or the Secretary of Health, Education, and Welfare, with respect to fulfilling his responsibilities under this chapter, or any authorized representative of the Secretary or the Secretary of Health, Education, and Welfare, shall have a right of entry to, upon, or through any coal or other mine.

government argues here that Stille was "authorized" by the Secretary and so defendant has no cause to complain.

The government further contends that it is within the Secretary's discretion to choose "authorized representatives", and that review of such a decision is precluded under the Federal Administrative Procedures Act, 5 U.S.C. § 701(a)(2).[4] The government lastly argues that defendant at this time is without standing to challenge the inspector's qualifications. The plaintiff maintains that under the Supreme Court's decision in *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), a two-prong test exists which must be met by persons seeking to challenge agency action. Under *Camp*, the complainant must show that he or she is in a class which Congress sought to protect by enacting the legislation. Second, the complainant must show that he or she has been harmed by the defendant's acts. The government asserts that the defendant here can meet neither test and so for this reason, and those set out above, the defendant's refusal to permit entry to the mine was unlawful.

In its reply, defendant relies on Section 505 of the Act, 30 U.S.C. § 954, which reads in part:

§ 954. Appointment of administrative personnel and inspectors; qualifications; training programs

The Secretary may, subject to the civil service laws, appoint such employees as he deems requisite for the administration of this chapter and prescribe their duties. Persons appointed as authorized representatives of the Secretary shall be qualified by practical experience in mining or by experience as a practical mining engineer or by education: *Provided, however,* That, to the maximum extent feasible, in the selection of persons for appointment as mine inspectors, no person shall be so selected unless he has the basic qualification of at lest five years practical mining experience and in assigning mine inspectors to the inspection and investigation of individual mines, due consideration shall be given to the extent possible to their previous experience in the particular type of mining operation where such inspections are to be made.

Defendant asserts that the provision in this Section amends 30 U.S.C. § 813, so that a representative of the Secretary is not "authorized" unless the Secretary, in assigning mine inspectors to sand and gravel mines, has given due consideration to inspectors' previous experience in similar mining conditions. Defendant alleges that in the Marquette office of the FMS&HC, which inspects mines in the Upper Peninsula, and the upper-half of the Lower Peninsula of the State of Michigan, as well as in Northern Wisconsin, none of the 13 inspectors has sand and gravel mine experience, even though over 1000 miners in the region work in sand and gravel mines. Defendant consequently concludes that the Secretary has not given due consideration to inspectors' prior experience. For this reason, defendant argues that Stille was not an authorized representative of the Secretary under 30 U.S.C. § 813, and that he therefore had no right of access into defendant's mine.

Defendant further contends that the assignment of inspectors under 30 U.S.C. § 813 is not wholly discretionary because of the proviso in 30 U.S.C. § 954. For this reason, the Administrative Procedures Act is said to permit review, and the court authorized to grant relief where the Secretary has abused his discretion.[5]

---

4. 5 U.S.C. § 701(a)(2) reads in part as follows:
    (a) This chapter applies, according to the provisions thereof, except to the extent that—
        (1) statutes preclude judicial review; or
        (2) *agency action is committed to agency discretion by law.*

5. 5 U.S.C. § 706 reads as follows:
    To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and *determine the meaning or applicability of the* terms of an agency action. The reviewing court shall—
        (1) compel agency action unlawfully withheld or unreasonably delayed; and

Defendant lastly asserts that it had standing to raise these issues due to the denial of due process it suffers in permitting inspections of its property by unqualified inspectors. For these reasons, defendant requests this court to deny plaintiff's motion for preliminary injunction.

## DISCUSSION

In evaluating the propriety of granting a preliminary injunction, the Sixth Circuit in *Mason County Medical Association v. Knebel*, 563 F.2d 256 (1977), set out four factors which must be considered:

(1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

(2) Whether the plaintiff has shown irreparable injury;

(3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

(4) Whether the public interest would be served by issuing a preliminary injunction.

■ Reviewing the record as it relates to the above, I am convinced that the government has met its burden, and that the requested preliminary injunction ought, therefore, to follow.

In first considering the public interest in issuing injunctive relief, it is clear that, pending the outcome of this case, Congressional intent and public safety would best be advanced by enforcing mine inspections. The Act, along with its legislative history, makes indisputable Congress' continuing concern over the health and welfare of miners. For example, Title I, Section 102 of the Act, 30 U.S.C. § 801, reads in part:

§ 801. Congressional findings and declaration of purpose

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

Congress declares that—

(a) the first priority and concern of all in the coal or other mining industry must be the health and safety of its most precious resource—the miner;

(b) deaths and serious injuries from unsafe and unhealthful conditions and practices in the coal or other mines cause grief and suffering to the miners and to their families;

(c) there is an urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines in order to prevent death and serious physical harm, and in order to prevent occupational diseases originating in such mines;

(d) the existence of unsafe and unhealthful conditions and practices in the Nation's coal or other mines is a serious impediment to the future growth of the coal or other mining industry and cannot be tolerated;

(e) the operators of such mines with the assistance of the miners have the primary responsibility to prevent the existence of such conditions and practices in such mines;

(f) the disruption of production and the loss of income to operators and miners as a result of coal or other mine accidents or occupationally caused diseases unduly impedes and burdens commerce;

Further, as stated by the Senate Committee on Human Resources (Senate Report No. 95–181), in recommending passage of the bill:

The hazards involved with the mining of coal and other materials and the need to provide for the health and safety of

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

the nation's miners have long been a matter of Federal law.

As early as 1865, a bill was introduced in the Congress to create a Federal Mining Bureau. However, little was done until a series of serious mine disasters occurred after the turn of the century, causing public demand for Federal action to stop excessive loss of life. In July 1910, an act of Congress established a Bureau of Mines in the Department of the Interior which was charged with making:

Diligent investigation of the methods of mining especially related to the safety of miners and the appliances best adapted to prevent accidents, the possible improvement of conditions under which mining operations are carried on, the treatment of ores and other mineral substances, the use of explosives, the prevention of accidents, and other inquiries and technological investigations pertinent to said industries.

This act recognized the need to attack the hazards in the mineral industries.

\* \* \* \* \* \*

Despite the major advances that had been made in the field of mine safety and health, major mine disasters continued to occur. A task force was established to investigate the mine safety situation and to make recommendations. A report was submitted in August, 1963. In 1966, Public Law 89–376 became law, partially fulfilling the task force recommendations. These amendments saw to it that coal mines employing 14 or fewer persons were included as title I mines. The bureau was also given a new enforcement tool, a "reinspection closing order" enabling inspectors to prevent certain types of repeated violations by some operators.

The 1966 amendments only reached a small portion of the causes of fatalities and accidents occurring in mines. The larger number of such occurrences lay outside and beyond the reach of the Federal statute, and was left by Congress to be embraced by State laws and the Bureau of Mines Advisory Coal Mine Safety Code.

In enacting the Federal Metal and Non-Metallic Mine Safety Act of 1966 (Public Law 89–577) (herein, the Metal Act), the Congress was still paying specific heed to the hazardous nature of the mining industry.

The number and severity of the injuries experienced each year by persons employed in the extractive industries should be alarming to an America that prides itself on its \* \* \* concern for the welfare of its citizens. Sen.Report No. 1296, 89th Cong., 2d Session, Federal Metal and Non-Metallic Mine Safety Act, p. 5)

It was this condition which the Metal Act was designed to correct.

Similar concerns were the genesis for the Federal Coal Mine Health and Safety Act of 1969 (Public Law 91–153) (herein, the Coal Act).

The committee determined early in its consideration that the Nation can no longer accept the fatalistic attitude which permeates this industry that "coal mining is a hazardous occupation, and we cannot change this fact." Men's lives are at stake and those of their families who are dependent on them.

Despite the hazardous nature of this occupation, the committee is convinced that these hazards can be substantially reduced or eliminated. Many are due to bad practices and a failure on the part of many, including the Federal Government, to act vigorously years ago to change them. (Senate Report No. 91–411, 91st Cong., 1st Session, Federal Coal Mine Health and Safety Act of 1969, p. 13)

Yet, despite this considerable Congressional attention, our nation still experiences deaths and serious injuries in our mines at a rate which casts shame on an advanced, industrialized society. Every working day of the year, at least one miner is killed and sixty-six miners suffer disabling injuries in our nation's mines.

As disturbing is the frequency with which the nation is experiencing tragic mining disasters. Numerous disasters in both coal and non-coal segments of the industry underscore those areas of inadequacy of our current law and the fact that the enforcement and administration of our current mine health and safety programs has failed to produce the level of protection for our nation's miners which should be within the capacity of our current mine safety laws.

\* \* \* \* \* \*

These tragic disasters and the hundreds of deaths and serious injuries which occur in our mine each year are testament to the inadequacies of our current mine safety and health laws and their past enforcement by the Department of the Interior. These recurrences signal a pressing need for legislative improvements in our mine safety and health programs. See, 1977 U.S.Code, *Congressional and Administrative News*, p. 3401, et seq.

Congress determined that regular mine inspections are necessary to ensure that miners' working conditions are decent and safe. *Id.*, at 3403–3404. The public interest is violated where a mine owner is permitted to exclude an authorized inspector prior to the inspector's statutorily required evaluation of a mine's safety because of a preliminary disagreement over the inspector's qualifications. As discussed *infra*, this is a dispute better left for appeal of a safety violation citation.

Moreover, I find that plaintiff has established a probability of success on the merits, and that failure to issue an injunction will result in irreparable harm to plaintiff's interests. The defendant admits that the Secretary has authority to inspect its mine, and that defendant experiences no harm where authorized and qualified inspectors request entry. The defendant further acknowledges that Stille was authorized by the Secretary to inspect his mine, and that Stille had sufficient background and training to qualify as a federal mine inspector. Defendant contends, however, that 30

U.S.C. § 813 is amended by 30 U.S.C. § 954, which obligates the Secretary to assign inspectors after giving due consideration to inspectors' familiarity with particular mining conditions. For this reason, defendant asserts that under Section 813, inspectors must not only be authorized by the Secretary, they must also be qualified by having had previous mining experience in similar types of mines. Because Stille had no prior experience in sand and gravel mines, defendant maintains that Stille was not qualified to inspect its mines. Consequently, defendant requests that the court deny plaintiff's motion for preliminary injunction because defendant allegedly had the right to bar Stille's entry.

■ I disagree. Defendant no doubt is correct in arguing that under Section 954, the Secretary is obligated to assign inspectors after giving due consideration to their training and background. However, Section 954 does not amend Section 813 in such a way that the only inspectors qualified under Section 813 to inspect particular mines are those inspectors who have previous experience in similar mining conditions. Section 954 limits the Secretary's discretion in assigning inspectors. It does *not* define the qualifications of any particular inspector.

■ Defendant nevertheless contends that because no sand and gravel mine-experienced inspector operates out of the Marquette office, the Secretary has obviously failed to abide by Section 954. For that reason, defendant contends that it need not grant mine access to Marquette office inspectors.

This reasoning is similarly faulty. It is well settled that absent evidence to the contrary, the orders and decisions of administrative bodies are presumed to be valid and reasonable, and that an administrative body has performed its duties under the law. *See*, 73 C.J.S. Public Administrative Bodies and Procedure § 205 p. 557 (1951); 2 Davis, *Administrative Law Treatise*, § 16.07 (1951). Defendant has presented no evidence which would compel a conclusion that

the Secretary did not give due consideration to inspectors' background when assigning them to investigate particular mines. It may well be that the number of underground mines located in the region covered by the FMS&HC's Marquette office so greatly outnumber the quantity of sand and gravel mines as to make it impracticable to retain on the staff an inspector who has sand and gravel mine experience. Further, because the extension of the mine safety laws to sand and gravel mines exists as a recent phenomenon, the Secretary may have had difficulty in finding qualified persons to inspect sand and gravel mines.

█ Even if defendant could demonstrate a failure by the Secretary to comply with Section 954, I cannot believe that this would warrant pre-inspection exclusion of FMS&HC inspectors. Section 813, which sanctions mine inspections by the Department of Labor, speaks only in terms of persons "authorized" by the Secretary to inspect mines. Section 813 does *not* declare that inspectors must be "qualified". No doubt they must, as evidenced by Section 954. However, given the gravity of mine safety, I cannot believe that Congress intended to let a mine operator bar an "authorized" mine inspector merely because that mine operator disagreed with the Secretary's determination of who was qualified. Such a result would severely constrict the plaintiff's authority to enforce the Act.[6]

Moreover, mine operators are not injured by permitting inspections by persons who do not have prior experience in similar type of mines, but who are nevertheless authorized by the Secretary. Any injury the mine operator might suffer, if an operator suffers any injury at all, does not occur until the operator is cited for a violation of federal mine safety laws. At that point, the operator can raise defenses based upon inspectors' alleged lack of experience, and a record will then exist which will assist an administrative law judge in determining whether or not an inspector's investigation was skillful.

This conclusion is buttressed by the fact that Section 813 authorizes FMS&HC inspections not only to determine whether or not there has been a violation of the Act, but also to gather information with respect to mandatory health and safety standards, and to determine whether or not an imminent danger exists.

For these reasons, I find defendant's position to be unsupportable. The right to exclude federal mine inspectors for reasons presented in this case would unduly interfere with the plaintiff's effective enforcement of the Act and would result in danger to the miners themselves.[7] Consequently, I conclude that plaintiff has demonstrated a probability of succeeding on the merits, and that failure to grant plaintiff's motion for a preliminary injunction will irreparably harm plaintiff's interest in enforcing the Act. Further, I find that granting plaintiff's motion will not result in harm to others and certainly will be in the public interest, I, therefore, grant plaintiff's motion and enjoin defendant from excluding from its mines persons who are authorized representatives of the Secretary.

---

6. If this court were to accept defendant's theory, a mine operator would thereafter be empowered power to exclude an inspector with, for example, three years prior experience in a sand and gravel mine, where the operator felt that no inspector was "qualified" unless he or she had five years prior experience. It is not for mine operators, but the Secretary and the Congress, to define who is and who is not a qualified inspector.

7. Defendant defends his behavior by alleging that it is in a miner's interest to have only "qualified" inspectors representing the Secretary, and that an "unqualified" inspector could do more damage than good. Notably, however, defendant's behavior would have the end result of precluding any inspection at this time, even by inspectors with many years of mining experience and who have been trained by the Secretary.